Filed 12/21/15  Walton v. OneBeacon Ins. Co. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EDWARD WALTON, | B261863 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC361382) |
| v. | |
| ONEBEACON INSURANCE COMPANY, | |
| Plaintiff and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

Simon Greenstone Panatier Bartlett and Brian P. Barrow for Plaintiff and Appellant.

Musick, Peeler & Garrett and Susan J. Field for Plaintiff and Respondent.

---

# INTRODUCTION

Edward Walton appeals from a judgment following an order granting summary judgment in favor of respondent OneBeacon Insurance Company on its claim for subrogation. He contends respondent failed to demonstrate that it was entitled to equitable or contractual subrogation. For the reasons explained below, we conclude that respondent made an adequate showing that it was entitled to subrogation, and that appellant failed to raise triable issues of material fact. Accordingly, we affirm the judgment.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 2, 2006, appellant filed a complaint for personal injury against 46 defendants, including The William Powell Company (Powel), alleging that he had developed malignant mesothelioma as a result of exposure to asbestos from defendants' asbestos-laden products and/or products designed to be used in association with asbestos-laden products.[1] The complaint alleged that Powell produced valves used in Navy ships, that appellant was exposed to Powell valves during his Navy service from 1946 to 1968, and that he was diagnosed with mesothelioma in November 2005. As a result of dismissals and settlements, by midtrial, Powell remained the only defendant in the action. The jury found in favor of appellant, and a judgment was entered awarding damages totaling $5,660,624.39.

After Powell appealed, this court reversed. The record established that Powell supplied none of the asbestos-laden products to which appellant was exposed, and to the extent the valves were used in conjunction with asbestos-laden

---

[1]     The complaint was originally brought by both Edward Walton and his late wife.

products, we concluded that Powell was not liable under the component parts doctrine. We awarded Powell its costs on appeal. On February 29, 2012, the California Supreme Court denied review in light of its decision in *O'Neil v. Crane Co.* (2012) 53 Cal.4th 33. Thereafter, on June 14, 2012, Powell obtained a judgment following appeal for costs in the amount of $163,589.37.[2]

On August 30, 2012, respondent filed an ex parte application for leave to intervene in the action. Respondent argued that it had a right to intervene, as it was a subrogee of Powell. In support of the application to intervene, Sander Alvarez, respondent's attorney, submitted a declaration, stating (1) that respondent is the successor-in-interest to General Accident Fire and Life Assurance Corporation, Ltd. (General Accident), (2) that respondent had issued several primary general liability policies to Powell, including policy No. GLA-42-717-41 in effect for policy period July 26, 1976 to July 26, 1977, (3) that pursuant to those policies, respondent agreed to defend Powell in the instant action, and (4) that respondent incurred and paid approximately $655,885 in defense costs on behalf of Powell in connection with the action, including the costs awarded in the June 14, 2012 judgment. Respondent sought a declaration that it was entitled to the appellate costs awarded in the June 14, 2012 judgment, and requested that a judgment be issued stating that it, rather than Powell, should recover costs of suit in the same amount.

Attached to the application was a proposed complaint-in-intervention. The complaint alleged that Powell was covered under insurance policy no. GLA-42-717-41, issued by respondent's predecessor, General Accident. It further alleged that respondent, the successor-in-interest to General Accident, paid Powell's

---

[2]     The award of costs chiefly consists of the costs incurred to maintain a supersedeas bond during the appellate process.

3

defense costs in the instant action pursuant to that policy. A judgment in favor of Powell awarding costs was issued on June 14, 2012. Finally, the complaint alleged that respondent was a subrogee of Powell under equitable subrogation principles and the subrogation provision in the policy. That contractual provision stated: "In the event of any payment under this policy, the company shall be subrogated to all the insured's rights to recover therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights."

Following a hearing at which appellant's attorney appeared and argued, the superior court granted respondent's application to intervene. The proposed complaint-in-intervention was filed August 31, 2012.

On October 1, 2012, appellant demurred to the complaint-in-intervention. He argued that respondent failed to allege facts demonstrating it was entitled to subrogation. Specifically, he contended that respondent failed to plead that Powell had "execute[d] and deliver[ed] instruments and papers and do[ne] whatever else is necessary to secure" respondent's subrogation rights, as required by the contractual subrogation provision. Appellant also argued that respondent lacked standing to intervene in the action, as "any dispute or conflict between it and Powell with regard to the costs judgment against Walton need not, and should not, be resolved here."

Respondent opposed the demurrer. It argued that intervention was appropriate, as it is the successor-in-interest to General Accident which had issued certain policies to Powell, and it had defended Powell in the action under those policies. Respondent argued that it had both contractual and equitable subrogation rights, and that those rights did not require any action on the part of Powell.

4

The trial court overruled the demurrer, and appellant answered the complaint-in-intervention.  Appellant generally denied the allegations and raised several affirmative defenses, including respondent's lack of entitlement to intervene and lack of standing.

On May 12, 2014, respondent filed a motion for summary judgment.  Respondent argued that it was entitled to judgment as a matter of law because it was subrogated to the rights of its insured, Powell, in the June 14, 2012 judgment, and the amount of the costs award is undisputed.  Respondent also argued that it was entitled to subrogation under equitable principles and under the express subrogation provision in policy No. GLA-42-717-41, as it paid the defense costs on behalf of Powell in the underlying action.

In support, respondent attached a declaration from Darilyn Michaud.  Michaud stated that she was the account manager at Resolute Management, Inc., which handled the claims at issue in the litigation under policy No. GLA-42-717-41.  She had been handling the claims under the policy since 2005, and had personal knowledge of the facts set forth herein.  She stated that respondent was the successor-in-interest to General Accident, that it had provided Powell a defense to the action under the policy, and that it had paid approximately $655,885 in defense costs through the trial and appeal of the action.[3]

Appellant opposed the motion for summary judgment.  He argued that respondent failed to show that the General Accident policy provided coverage for claims arising from exposure outside the policy period, that the contractual conditions for subrogation had been satisfied, or that respondent had the exclusive

---

[3]    In support of its motion for summary judgment, respondent also filed a request for judicial notice of various documents in the court file.  The trial court denied the request on the ground that it was "not necessary to request judicial notice of pleadings already in the case file."

5

subrogation rights. Appellant also challenged Michaud's declaration for lack of foundation.

In reply, respondent argued that the policy covered appellant's claims against Powell, as under California law, exposure to asbestos outside the policy period does not preclude coverage. It further argued that all contractual conditions for subrogation had been satisfied, as it had paid Powell's defense costs and nothing more was required for subrogation. As to exclusivity, respondent contended that whether Powell had other insurance policies was irrelevant, as respondent was seeking to recover only those costs it had paid. With respect to appellant's evidentiary objections to Michaud's declaration, respondent argued that Michaud had personal knowledge of the relevant facts based on her handling of claims under the policy since 2005. Respondent also argued that Michaud's testimony should be credited, as appellant had filed no affidavit or declaration in opposition.

On October 2, 2014, the trial court overruled appellant's evidentiary objections, and granted respondent's motion for summary judgment. The court determined that Michaud's statement that she was responsible for handling claims under the policy was sufficient to establish her personal knowledge of the asserted facts. It further determined that respondent was equitably and contractually entitled to subrogation. A judgment in favor of respondent and against appellant awarding costs was entered November 10, 2014.

On November 25, 2014, appellant noticed an intent to move for a new trial and set aside the judgment. In his memorandum in support of the motion for a new trial, appellant argued that a recently filed action by Powell in federal court in Ohio raised triable issues of material fact regarding respondent's subrogation rights. Specifically, in that action, Powell alleged that it had purchased commercial

6

general liability insurance from General Accident from 1955 to 1977, that General Accident merged with various other insurers and was renamed OneBeacon Insurance Company, that respondent had contractually assumed liability for all obligations to Powell under the General Accident policies, and that respondent had transferred those policies to another entity -- a "run-off" insurer -- in October 2012. The Powell complaint further alleged that respondent had limited case investigations, replaced counsel and unilaterally authorized large settlements in an attempt to "erode [Powell's] coverage and force Powell to pay out of its treasury defense costs and settlements." Appellant also sought leave to depose Michaud, as the Powell complaint alleged that Michaud and Resolute Management, Inc. acted in concert to deprive Powell of its rights under the General Accident policies.

Respondent opposed appellant's motion for a new trial, arguing that the Powell action was irrelevant, as that action did not involve appellant's claims. Respondent further argued that the allegations in the unverified Powell complaint constituted inadmissible hearsay. As to taking Michaud's deposition, respondent argued that appellant had forfeited any right to do so by failing to exercise it during the four months between the filing of respondent's motion for summary judgment and the filing of appellant's opposition.

On January 23, 2015, the trial court denied appellant's motion for a new trial. It found that appellant had failed to demonstrate that the Powell federal action in Ohio was "newly discovered" evidence. More important, the allegations in the complaint constituted inadmissible hearsay. As to reopening discovery to take Michaud's deposition, the court denied the request based on appellant's lack of reasonable diligence.

Appellant filed a timely appeal from the judgment.

# DISCUSSION

A. *Standard of Review*.

Appellant contends the trial court erred in granting respondent's motion for summary judgment. Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "'Review of a summary judgment motion by an appellate court involves application of the same three-step process required of the trial court. [Citation.]'" (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1662 (*Bostrom*).) Here, the three steps are (1) identifying the issues framed by the complaint, (2) determining whether the moving party has made an adequate showing of facts that would justify a judgment in its favor, and (3) determining whether the opposing party has raised a triable issue of fact. (*Ibid.*)

"Although we independently review the grant of summary judgment [citation], our inquiry is subject to two constraints. First, we assess the propriety of summary judgment in light of the contentions raised in [appellant's] opening brief. [Citation.] Second, to determine whether there is a triable issue, we review the evidence submitted in connection with summary judgment, with the exception of evidence to which objections have been appropriately sustained. [Citations.]" (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1124.)

Appellant also contends the trial court erred in denying his motion for a new trial. "[I]n the case of an order denying a new trial following summary judgment,

8

the determinations underlying the denial dictate our standard of review. [Citation.] To the extent the denial relies on the resolution of a question of law, including the nonexistence of triable issues of fact, we examine the matter de novo. [Citations.] . . . We examine other determinations underlying the denial 'under the test appropriate to such determination.'" (*Wall Street Network, Ltd. v. New York Times Co*. (2008) 164 Cal.App.4th 1171, 1176, quoting *Aguilar*, *supra*, 25 Cal.4th at p. 859.)

> B. *Respondent's Subrogation Claim.*

In assessing the propriety of summary judgment, we look first to respondent's allegations in the complaint-in-intervention. (*Bostrom*, *supra*, 35 Cal.App.4th at p. 1662.) The complaint alleged that respondent, the successor-in-interest to General Accident, paid Powell's defense costs in the instant action pursuant to an insurance policy. It alleged that Powell obtained a judgment awarding costs, and that respondent was a subrogee of Powell under equitable subrogation principles and the subrogation provision in the policy. In granting summary judgment, the trial court determined that respondent was entitled to subrogation under both equitable principles and the contractual subrogation provision. As explained below, we agree with these determinations.

"In the insurance context, subrogation takes the form of an insurer's right to be put into the position of the insured for a loss that the insurer has both insured and paid. [Citations.]" (*State Farm General Ins. Co. v. Wells Fargo Bank, N.A*. (2006) 143 Cal.App.4th 1098, 1106.) "In other words, subrogation does no more than assign to the insurer the claims of its insured against the legally responsible party." (*Garbell v. Conejo Hardwoods, Inc*. (2011) 193 Cal.App.4th 1563, 1571.) "Subrogation has its source in equity and arises by operation of law (legal or

equitable subrogation). [Citation.] It can also arise out of the contractual language of the insurance policy (conventional subrogation). [Citation.]" (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 272.)

1. *Equitable Subrogation*

Here, respondent asserted a cause of action for equitable subrogation. Generally, the elements of a claim for equitable subrogation are: "(1) the subrogee made payment to protect the subrogee's own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must be one for which the subrogee was not primarily liable; (4) the entire debt must be paid; and (5) [the] subrogation must not cause injustice to the rights of others." (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc*. (2010) 188 Cal.App.4th 401, 432.) In moving for summary judgment, respondent presented evidence that it had paid Powell's defense costs pursuant to an insurance policy its predecessor had issued to Powell. The costs were incurred to defend against appellant's claims, and respondent paid all trial and appellate costs, totaling over $655,000.

Appellant contends respondent failed to show it paid the defense costs to protect its own interest, rather than acting as a volunteer. Appellant contends that General Accident, not respondent, insured Powell against his personal injury (asbestos) claims. In addition, appellant contends that the General Accident policy covered only those claims occurring between July 26, 1976 to July 26, 1977, whereas appellant was exposed to Powell valves between 1946 to 1968, outside the policy period. We conclude appellant has not raised a triable issue as to coverage under the General Accident policy.

First, no triable issue exists as to respondent's obligation under the General Accident policy. As detailed above, respondent's attorney submitted a declaration

10

stating (1) that respondent is the successor-in-interest to General Accident, (2) that pursuant to one or more General Accident policies, respondent agreed to defend Powell in the instant action, and (3) that respondent incurred and paid approximately $655,885 in defense costs on behalf of Powell in connection with the instant action. Nothing in the record indicates the declaration was challenged or contradicted. Moreover, under Evidence Code section 631, "[m]oney delivered by one to another is presumed to have been due to the latter." Here, it is uncontradicted that respondent paid Powell's defense costs under the 1976-1977 General Accident policy. Thus, under the Evidence Code, it is presumed that respondent was obligated to defend Powell pursuant to that policy. Appellant presented no evidence to challenge the presumption. Accordingly, there was no triable issue as to respondent's obligation under the General Accident policy.[4]

Similarly, there was no triable issue as to whether the General Accident policy covered appellant's claims against Powell. In *Montrose Chemical Corp. v. Admiral Ins. Co*. (1995) 10 Cal.4th 645, 689, the California Supreme Court held that "the continuous injury trigger of coverage should be applied to the underlying third party claims of continuous or progressively deteriorating damage or injury alleged to have occurred during [the insured's] policy periods." Thus, "bodily injury and property damage which is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods." (*Ibid*.) In *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co*. (1996) 45 Cal.App.4th 1, the appellate court applied that

---

[4]     We note that in its motion for a new trial, appellant sought to introduce Powell's federal complaint against respondent. In that complaint, Powell alleged that General Accident was merged with various other insurers and renamed OneBeacon Insurance Company, and that respondent contractually assumed liability for all obligations to Powell under any General Accident policy.

reasoning to personal injury (asbestos) claims. The court held that coverage is triggered if the claimant is exposed to the insured manufacturer's product before or during the policy period. (*Id.* at pp. 61-62.) Stated differently, "all of a policyholder's policies are triggered from first exposure to the policyholder's products until the date of claim or death, whichever occurs first." (*Id.* at p. 62.) Here, appellant's 2006 complaint alleged that he was first exposed to Powell valves in 1948. Thus, the 1976-1977 General Accident policy was triggered because it fell within the period between 1948 and 2006. Because coverage was triggered, respondent paid Powell's defense costs to protect its own interest, not as a volunteer. (Cf. *United Pacific Ins. Co. v. Hanover Ins. Co.* (1990) 217 Cal.App.3d 925, 939 [because insurance company failed to show its policy covered loss, it had no right to equitable subrogation].)

Appellant also contends that respondent was not entitled to equitable subrogation because it failed to make an adequate showing that it had exclusive subrogation rights. Although exclusivity is not an element of a claim for equitable subrogation, the existence of other insurers could implicate the fifth element of the claim -- whether subrogation would cause injustice to the rights of others. Respondent, however, produced evidence that it paid the entirety of Powell's defense costs. We also note that respondent has asserted, without contradiction, that in the more than three years since the entry of judgment, no other insurer has sought contribution for Powell's defense costs. Thus, appellant has produced no triable issue of fact that granting respondent's subrogation rights would prejudice another insurer's subrogation rights.

Finally, appellant contends that Michaud's declaration did not provide admissible evidence to support a claim for equitable subrogation. Specifically, appellant contends that Michaud failed to establish a foundation for her personal

12

knowledge, as she did not describe her job duties, access to information or other indicia of personal knowledge. We disagree. In her declaration, Michaud stated that she had been responsible for handling claims under the insurance policy No. GLA-42-717-41 since late 2005. That statement is sufficient to establish her personal knowledge about, among other things, the terms of the policy, the claims made on the policy, the insurer who paid the claims, and the amount paid. (See *Roy Brothers Drilling Co. v. Jones* (1981) 123 Cal.App.3d 175, 181-182 [declarant's statement that he "'personally handled'" negotiations sufficient to establish declarant's personal knowledge of the parties' agreement, including the agreed scope of work and the related written documents].) Thus, Michaud would have personal knowledge that Powell made a claim on the policy, that respondent accepted the claim, and that respondent paid over $655,000 under the policy. Accordingly, her declaration is sufficient to establish that respondent was entitled to be subrogated for a claim it insured and paid.

2. *Contractual Subrogation*

Although not expressly asserted, respondent also raised a claim for contractual subrogation in the complaint. As stated above, the subrogation language in the policy provides: "In the event of any payment under this policy, the company shall be subrogated to all the insured's rights to recover therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights." In moving for summary judgment, respondent produced evidence that it made payments under the policy, including paying the costs awarded to Powell in the June 14, 2012 judgment. Respondent thus made an adequate showing that it was entitled to contractual subrogation. We further conclude that appellant did not

13

raise a triable issue of fact. The term "payment" plainly applies to respondent's payment of defense costs, and once Powell obtained the judgment awarding costs, no other action was required on its part to secure respondent's subrogation rights. Accordingly, summary judgment was properly granted.


C.      *Appellant's Motion for a New Trial.*

Appellant contends he is entitled to a new trial based on the fact that Powell sued respondent approximately 12 days after the hearing on respondent's motion for summary judgment in the instant action. Appellant contends that Powell's allegation in the Ohio federal action that respondent sold Powell's policies to another insurer raised triable issues of fact as to whether respondent had or retained any subrogation rights. Those allegations, however, constituted inadmissible hearsay. (See *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914 [although court may take notice of judicial document, it cannot take judicial notice of hearsay allegations in court documents].) A party cannot rely on hearsay to oppose summary judgment. (See *Donnachie v. East Bay Regional Park Dist.* (1963) 217 Cal.App.2d 172, 175 ["affidavit or declaration which is based upon hearsay or conclusions and which contains no competent averments made by one having personal knowledge of the facts is of no value in determining whether there is a triable issue of fact"].) Moreover, the Powell complaint raised no triable issue, as there is no allegation that Powell or another party paid any of the defense costs in this action. Nor has appellant produced any evidence that respondent assigned or transferred its subrogation rights to another insurer. Accordingly, the trial court did not err in denying appellant's motion for a new trial.

14

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

15